**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of RODGERS EXCAVATING, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:15cv482 |
| SWAMP FOX UTILITIES, LLC, IKHANA, LLC, and CONTINENTAL CASUALTY COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on the "Motion for Extension of Time to Supplement Disclosures Under Rules 26(a)(1) and 26(a)(2)" (Docket Entry 32) (the "Extension Motion") filed by Defendant Continental Casualty Company ("Continental"). For the reasons that follow, the Court will deny the Extension Motion.

**FACTUAL BACKGROUND**

Defendant Ikhana, LLC ("Ikhana") worked as the prime contractor on a construction project (the "Project") for the United States Army (the "Army"). (Id. at 1; see also Docket Entry 34 at 2.) Continental served as the surety on the Project, for which Ikhana and Continental executed payment and performance bonds. (Docket Entry 32 at 1; see also Docket Entry 1, ¶¶ 4, 41.) Ikhana subcontracted with Defendant Swamp Fox Utilities, LLC ("Swamp Fox") to provide labor, equipment, and materials for the Project.

(Docket Entry 32 at 2; see also Docket Entry 1, ¶ 8.) Swamp Fox and/or Ikhana then contracted with Plaintiff Rodgers Excavating ("Rodgers") to perform work on the Project. (Docket Entry 1, ¶¶ 8-10; see also Docket Entry 32 at 2.)

Rodgers ceased work on the Project on June 17, 2014, followed shortly by Swamp Fox. (Docket Entry 32 at 2; see also Docket Entry 34 at 2.) During the fall of 2014, the Army terminated its contract with Ikhana and called upon Continental to satisfy the performance bond. (Docket Entry 32 at 2; see also Docket Entry 34 at 2.) Continental then arranged for Samet Corporation ("Samet") to complete the work remaining under Ikhana's contract. (Docket Entry 32 at 2; see also Docket Entry 34 at 2.)

## PROCEDURAL HISTORY

Rodgers commenced this action for, inter alia, breach of contract, alleging that it did not receive full payment for the work it performed on the Project. (Docket Entry 1, ¶¶ 11-15, 21-24.) Continental answered (Docket Entry 11) and asserted numerous affirmative defenses, including that the "Complaint is barred or mitigated by setoffs or backcharges" (id. at 10).[1]

---

[1] The Federal Rules of Civil Procedure required Continental to state in its Answer "in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Although "[a]n affirmative defense may be pleaded in general terms," it must "give[] [the] plaintiff fair notice of the nature of the defense." Clem v. Corbeau, 98 F. App'x 197, 203 (4th Cir. 2004) (internal quotation marks omitted). During the Extension Hearing, Continental asserted that it did not know the facts supporting the

-2-

On September 17, 2015, the Court issued a Scheduling Order adopting the parties' proposed discovery plan, establishing a Rule 26(a)(1) initial disclosure deadline of November 2, 2015; a Rule 26(a)(2) expert witness disclosure deadline for Continental of March 1, 2016; a Rule 26(e) supplementation deadline of March 20, 2016; and a discovery and mediation deadline of April 1, 2016. (Text Order dated Sept. 17, 2015 (adopting Docket Entry 20); Mediation Scheduling Order dated Sept. 18, 2015.) Consistent with the foregoing deadlines, on December 3, 2015, the Clerk set a trial date of January 9, 2017. (Docket Entry 23 at 1.) On April 4, 2016, the Court granted the parties' "Joint Motion to Extend Deadlines for Mediation and Discovery" (Docket Entry 27), extending the mediation deadline to May 31, 2016, and the discovery deadline to June 30, 2016. (Text Order dated Apr. 4, 2016.) On May 20, 2016, the Court granted the parties' "Second Joint Motion to Extend Deadlines for Mediation and Discovery" (Docket Entry 28), further

---

Corrective Work Claim at the time it filed the Answer, and that the Answer's "setoffs and backcharges" defense referred to certain outstanding payments that Rodgers might owe to vendors and/or for materials. If Continental's defense of "setoffs and backcharges" did not encompass the Corrective Work Claim at the time Continental filed the Answer, and given Continental's failure to amend its Answer to provide "fair notice of the nature of the defense" involving the Corrective Work Claim, evidence related to that defense would remain irrelevant to the claims and defenses currently alleged in this action. Continental, however, has argued that its "setoffs or backcharges" defense encompasses the Corrective Work Claim (see Docket Entry 37 at 4), and this Order will proceed on that assumption.

extending the mediation deadline to June 30, 2016, and the discovery deadline to August 1, 2016. (Text Order dated May 20, 2016.)

On August 31, 2016, Continental filed the Extension Motion, requesting extension of its disclosure deadlines to September 30, 2016. (See Docket Entry 32 at 1.)[2] Through the Extension Motion, Continental contends that, as Samet's work on the Project progressed, "[Samet] discovered that various items of the work performed by Swamp Fox, through its subcontractor Rodgers, were not in conformance with the Project plans and specifications," requiring "additional payment from Continental for the correction [of that nonconforming work (the "Corrective Work Claim")]." (Id. at 2.) In support of that contention, Continental submitted to the Court numerous change order requests (Docket Entries 37-2 through 37-7, 37-9) (the "Change Order Requests") that Samet provided to Continental beginning August 12, 2015 (see Docket Entry 37-2 at 1), detailing the alleged nonconforming work on the Project. Continental effectively seeks post hoc relief from its failure to disclose that information to Rodgers and Swamp Fox before the disclosure deadlines expired, as well as "to identify lay and/or

---

[2] Specifically, Continental seeks leave to supplement its disclosures and to designate new witnesses, including expert witnesses. (See Docket Entry 32 at 5 (requesting "an extension of the time to supplement disclosures under Fed. R. Civ. P. 26(a)(1) and 26(a)(2)," and "agreeing to make any new witnesses available for deposition").)

-4-

expert witnesses who can present testimony and other evidence in connection with Continental's Corrective Work Claim." (Docket Entry 37 at 3.)

In response to the Extension Motion, Rodgers and Swamp Fox argue that "(1) Continental has not shown, and cannot show, good cause why it neither made the requested disclosures in a timely manner, nor even requested an extension to make such disclosures during the discovery period, and (2) such an 'extension' would inevitably, and needlessly, delay trial." (Docket Entry 34 at 6.)[3] The Court conducted a hearing on the Extension Motion (the "Extension Hearing") that Continental, Swamp Fox, and Rodgers attended. (See Minute Entry dated Sept. 16, 2016.)[4]

## DISCUSSION

Under the Federal Rules of Civil Procedure (the "Rules"), near the inception of a case, a party must provide the other parties:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; [and]

---

[3] Swamp Fox "concurs with and reasserts the arguments set forth in Rodgers'[s] Response to the [Extension Motion]," and "requests that the Court grant the relief requested by Rodgers." (Docket Entry 35 at 1.)

[4] Ikhana did not file a brief regarding the Extension Motion (see Docket Entries dated Aug. 31, 2016, to present), and did not appear at the Extension Hearing (see Minute Entry dated Sept. 16, 2016).

-5-

> (ii) a copy - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A). "A party must make its initial disclosures based on the information then reasonably available to it," even if the disclosing party "has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E); see also Fed. R. Civ. P. 26(a)(1)(C) (providing that courts may set deadline for initial disclosures).

"In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A); see also Fed. R. Civ. P. 26(a)(2)(B) & (C) (describing material that parties must produce along with name of each expert witness); Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures at the times and in the sequence that the court orders."). Finally, "as ordered by the court," Fed. R. Civ. P. 26(e)(1)(B), "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure," Fed. R. Civ. P. 26(e)(1).[5]

---

[5] "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion,

The Rules further require the issuance of a scheduling order early in each case. See Fed. R. Civ. P. 16(b). "The drafters of the Rules intended [the scheduling] order to control the subsequent course of the action so as to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process." Forstmann v. Culp, 114 F.R.D. 83, 84-85 (M.D.N.C. 1987) (internal quotation marks omitted). "[Such a] schedule may be modified only for good cause and with the [Court's] consent." Fed. R. Civ. P. 16(b)(4). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D. W. Va. 1995); see also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the <u>diligence of the party seeking the extension</u>." (emphasis added)). Continental has identified nothing that would support a finding that it acted with diligence regarding the disclosures at issue.

The Scheduling Order required Continental to make its Rule 26(a)(1) initial disclosures by November 2, 2015 (with supplementations due by March 20, 2016), and its Rule 26(a)(2) expert witness disclosures by March 1, 2016. (See Text Order dated

---

at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

-7-

Sept. 17, 2015; see also Docket Entry 20 at 1-2.) Months after those deadlines (and 30 days after the close of discovery), Continental sought leave to supplement its initial disclosures in connection with the Corrective Work Claim and to make related expert disclosures. (See Docket Entry 32 at 5.)

According to Continental, the delay associated with these disclosures resulted from its lack of knowledge of the "[f]ull scope" of Rodgers's nonconforming work until approximately April 2016. (Docket Entry 32 at 2.) However, the Rules obliged Continental to investigate its defenses (including the Corrective Work Claim), see Fed. R. Civ. P. 26 advisory committee's note, 1993 Amendment, Subdivision (a), Paragraph 1 ("Before making its disclosures, a party has the obligation under subdivision (g)(1) to make a reasonable inquiry into the facts of the case."), and, as to such defenses, to provide both witness information and documentary evidence in its possession, custody, or control (e.g., the Change Order Requests that Samet provided to Continental beginning August 12, 2015) to Rodgers and Swamp Fox, see Fed. R. Civ. P. 26(a)(1)(A)(i) & (ii). Despite receiving at least three of the Change Order Requests (see Docket Entries 37-2 through 37-4) before the parties' Rule 26(a)(1) disclosure deadline of November 2, 2015, and three additional Change Order Requests (see Docket Entries 37-5 through 37-7) before the supplementation deadline of March 20, 2016, Continental did not disclose that (or any related witness)

-8-

information to Rodgers and Swamp Fox until May 9, 2016 (see Docket Entry 32 at 3 (asserting that Continental provided the Corrective Work Claim, detailing the items of alleged non-conforming work, to Rodgers and Swamp Fox on May 9, 2016); see also Docket Entry 37-1 (noting that Continental emailed Rodgers's attorney regarding the Corrective Work Claim on April 13, 2016)).[6]

Additionally, Samet provided each of those six Change Order Requests to Continental by January 28, 2016. (See Docket Entries 37-2 through 37-7.) Accordingly, at the Extension Hearing, Continental did not dispute that its communications with Samet provided Continental with a good-faith basis for requesting an extension of the expert and supplemental disclosure deadlines no later than February 2016. However, even after Continental provided the Corrective Work Claim to Rodgers and Swamp Fox some three months later (i.e. on May 9, 2016) (see Docket Entry 37-1 at 9), Continental waited nearly four additional months (i.e. until August 31, 2016) to file the Extension Motion (see Docket Entry 32). That unreasonable delay in presenting the Extension Motion further counsels against finding that Continental acted with diligence regarding the proposed belated disclosures. Put simply,

---

[6] At the Extension Hearing, Continental also reported that it may still have additional documentation related to the Corrective Work Claim that it has never provided to Rodgers, but that it would disclose if given an extension of its supplementation deadline.

-9-

Continental has not established "good cause" for amending the Scheduling Order.

Moreover, because Continental waited until after the disclosure deadlines passed to seek their extension, it also must satisfy the demanding "excusable neglect" standard. See Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). "'Excusable neglect' is not easily demonstrated, nor was it intended to be." Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530, 534 (4th Cir. 1996). The Court's review of controlling authority and the record confirms that Continental has not made the requisite showing.

The United States Supreme Court has explained that the excusable neglect inquiry "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). "These include . . . [1] the danger of prejudice to the [opposing party], [2] the length of the delay and [3] its potential impact on judicial proceedings, [4] the reason for the delay, including whether it was within the reasonable control of the movant, and [5] whether the movant acted in good faith." Id. Considering those factors in the context of this case, the Court first observes that granting Continental's

-10-

requested relief would require a significant extension of the discovery period and thus would jeopardize the long-scheduled trial date (or, at a minimum, would deprive the Court of a reasonable amount of time to assess any dispositive motions before such date).[7] These consequences portend possible serious prejudice to Rodgers's (and other parties') interest in maintaining an agreed-upon and judicially sanctioned end-point for this case, as well as an adverse impact on the Court's proceedings.

Coordinately, Continental's request for an extension of the expert and supplemental disclosure deadlines by more than six months (i.e. from March 1 and 20, 2016, to September 30, 2016) would represent a delay of unreasonable length under the circumstances, particularly given the absence of an acceptable reason for such delay (even if the Court assumes no bad faith on Continental's part).[8] In regard to the reason for delay, as detailed above, Continental possessed both knowledge of the alleged nonconforming work and a good-faith basis to request extensions of

---

[7] At the Extension Hearing, Continental suggested that, if the Court allows the Extension Motion, it may present as many as five additional witnesses that the other parties could then depose before trial. Beyond the time necessary for Rodgers to review any supplemental initial disclosure materials and any expert disclosure materials, Rodgers likely would have the right to depose any newly disclosed witnesses and to conduct other discovery regarding the Corrective Work Claim. That process reasonably could take months.

[8] Rodgers and Swamp Fox have not contended that Continental acted in bad faith. (See Docket Entry 34 at 7 n.2; see also Docket Entry 35 at 1.)

-11-

the disclosure deadlines before those deadlines passed, but failed to take actions within their "reasonable control," Pioneer, 507 U.S. at 395, to avoid delay.  In sum, the Pioneer factors counsel against a finding of excusable neglect.

## CONCLUSION

Because Continental has failed to show "good cause" under Rule 16(b)(4) and/or "excusable neglect" under Rule 6(b)(1)(B), the Court will not modify the deadlines for Continental to make and/or to supplement its initial and/or expert disclosures.[9]

**IT IS THEREFORE ORDERED** that the Extension Motion (Docket Entry 32) is **DENIED**.

                                      /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                        **United States Magistrate Judge**

September 26, 2016

---

[9] Nothing in this Order precludes Continental from arguing against exclusion under Rule 37(c)(1) of the documents related to the Corrective Work Claim that it disclosed to Rodgers in May 2016, and/or from providing late expert (or fact) witness disclosures and litigating matters concerning those untimely disclosures pursuant to Rule 37(c)(1).